## CASE *v.* THE SUSQUEHANNA and THE MAY CLINTON.[1]

### NEW YORK, L. E. & W. R. CO. *v.* THE MAY CLINTON.

*(District Court, E. D. New York.    May 12, 1888.)*

COLLISION—BETWEEN STEAM-BOAT AND TUG—MUTUAL FAULT.
    The ferry-boat S., crossing the North river from Jersey City to New York, had on her starboard hand the tug M. C., with libelant's canal-boat in tow along-side. which was going up river near the New York slips.   The ferry-boat made no change of course or speed on account of the approach of the tug.   The latter also maintained her speed until close to the ferry-boat, though perceiving that the latter was approaching without slackening speed, and making for her slip.   The ferry-boat and libelant's canal-boat came together, causing the damage for which these suits were brought.   *Held,* that the ferry-boat, having the tug on her starboard hand, was bound to keep out of the way of the latter.   *Held, also,* that, the course of the ferry-boat being known to the tug, and her speed being observed to be unchecked, it was the tug's duty to have stopped at once, or to have sheered out into the river and passed under the ferry-boat's stern; that the damages, therefore, should be divided between the tug and the ferry-boat.[2]

[1] Reported by Edward G. Benedict, Esq., of the New York bar.
[2] See Holland v. Brown, 35 Fed. Rep. 43.

In Admiralty.

*Carpenter & Mosher*, for Case.

*Wilcox, Adams & Macklin*, for the Susquehanna.

*R. D. Benedict*, for the May Clinton.

BENEDICT, J.   These actions raise for the determination of the court the question by whose fault it was that the canal-boat Victor and the ferry-boat Susquehanna came in collision on the 2d day of October, 1886. The canal-boat Victor was, at the time of the collision, being towed on the starboard side of the tug May Clinton, which tug was coming up the North river, bound to the foot of Twenty-Fourth street.   The Susquehanna was a ferry-boat of the Pavonia Line, at the time making one of her regular trips from Jersey City to the foot of Chambers street, New York. The collision occurred about 6 o'clock in the evening.   The tide was running ebb.   The night was clear, so that ordinary lights of vessels could be seen a sufficient distance.   The proofs show beyond controversy that the ferry-boat made no change of course or speed because of the approach of the tug from below.   The collision occurred when the stern of the ferry-boat was a few feet outside of the upper rack of the ferry-slip, which is on pier 20.   As the ferry-boat was on a course crossing the course of the tug, having the tug upon her starboard side, by the general rule it was the duty of the ferry-boat to keep out of the way of the tug. I find no facts in the case that will make it an exception to the general rule.   The mere fact that the ferry-boat had the right to believe that the tug knew the ferry-boat to be bound to her slip at the foot of Chambers street, gave the ferry-boat no right to disregard the approach of the tug, and rely upon the tug's stopping so as to allow the ferry-boat to pass into her slip ahead of her.   The collision must therefore be held to have been caused by fault on the part of the ferry-boat in not keeping out of the way of the approaching tug.   I find the tug also in fault for navigating close to the mouth of the slip without sufficient cause, and holding her course and speed, as she did, until close upon the ferry-boat.   She saw the ferry-boat approaching; she observed the ferry-boat was not slacking her speed.   The position of the ferry-boat with relation to the ferry-slip, in my opinion, cast upon the tug the duty to stop at once, or else, by sheering out to her proper place in the river, to go under the ferry-boat's stern.   The ferry-boat was seen to be holding her speed, and the course that she was intending to pursue was known with certainty to the tug. The tug was bound to know that that course involved risk of collision. This rendered it incumbent upon her to stop, or to sheer out.   She did not sheer out, and held her speed until too late.   For this she was in fault.   The collision having been found to have been caused by fault of both vessels, the libelant, Niles Case, must have a decree against the ferry-boat and the tug for his damages, and in the case of the New York, Lake Erie & Western Railroad Company the damages must be apportioned.